**CRANE v. COLONIAL HOLDING CORPORATION.**

**No. 3902.**

Court of Civil Appeals of Texas. Amarillo.

Feb. 8, 1933.

F. H. McGregor and Morgan, Culton, Morgan & Britain, all of Amarillo, for appellant.

Underwood, Johnson, Dooley & Simpson, of Amarillo, for appellee.

HALL, Chief Justice.

The appellant, Crane, sued the appellee corporation for services rendered under a contract, and in the alternative upon a quantum meruit.

He alleges that prior to March, 1930, he had been employed by the Colonial Building & Loan Association as local representative with authority to sell investment stock and make loans on local property. That he was paid no salary and was compensated by commissions on the stock sold and loans made. That the appellee corporation was organized as a holding company for the purpose of acquiring and controlling building and loan associations through the ownership of the reserve fund of said associations. That appellee owned the reserve fund stock of the Colonial Building & Loan Association, for which plaintiff was working, and was desirous of acquiring the controlling interest in other building and loan associations in Texas, and to this end appellee, through its executive vice president and general manager, J. C. Allen, informed plaintiff that the appellee desired to enlist plaintiff's services

in searching out building and loan associations operating in the Panhandle of Texas and, if such associations should be found, appellee wanted plaintiff to investigate the condition of such associations and report to its officer Allen. That Allen had full authority to employ plaintiff, and expressly agreed with him that if any such controlling interest were acquired through plaintiff's efforts, appellee would pay plaintiff a reasonable compensation for his services. That plaintiff immediately abandoned his efforts to sell stock in the Colonial Building & Loan Association or to make loans in his behalf, and devoted his time and energies in canvassing and investigating various building and loan associations operating in Amarillo and surrounding territory. That he ascertained that both the Amarillo Building & Loan Association and the Texas Plains Building & Loan Association were favorable to the proposition and willing to convert said associations into reserve fund associations, and on or about July 17, 1930, an agreement was reached whereby the appellee acquired a controlling interest in both of said associations, which were consolidated and reorganized into a reserve fund association under the ownership and control of appellee. That negotiations between the appellee and the two associations were commenced about May 1, 1930, and consummated about July 20th, during which time plaintiff devoted his entire time and energy in investigating the affairs of the association, in interviewing officers, directors, and stockholders thereof, and reporting to the appellee. That plaintiff was the instrumentality who brought about and consummated the consolidation agreement whereby the appellee acquired the reserve fund of the reorganized company, which took over the Texas associations at a total cost to the defendant of approximately $165,000. That a reasonable fee for plaintiff's services in the premises is $15,000.

Defendant answered by general demurrer and numerous special exceptions, which were waived. It denied that Allen had made any contract with plaintiff or agreed to compensate him for his services. In the alternative it alleged that if Allen had made such contract, then in that event Allen had no authority to represent the appellee in so contracting. That appellee had certain by-laws which provided that no officer or agent acting alone should have authority to bind it upon any contract of the nature sued upon. That only the board of directors could enter into such contract with plaintiff or any one else. That the only services rendered by plaintiff in bringing to appellee's notice the fact that there was a possibility of consolidating the Texas associations were rendered by him in connection with his duties as selling agent for the Colonial Building & Loan Association, for which he was to be compensated by that company. That before it was possible for appellee to become the owner of the reserve fund stock of the Texas Plains Building & Loan Association, it was necessary that it be merged with the Amarillo Association and become the successor and owner of all the assets of the Amarillo Association and subject to all of its liabilities. That one of the essential things to be done was for the defendant to pay W. H. Brymer, secretary of the Texas Plains Building & Loan Association, a certain sum of money for his operating contract with said Texas Plains Association in order to cancel said operating contract and in order that the appellee might become the owner of and entitled to the benefits accruing to Brymer thereunder. That while plaintiff was pretending to act for and on behalf of the appellee in consolidating said two Texas associations with the idea of creating a position of steady employment for himself with appellee and while he was pretending to act honestly for the appellee and to its best interest, plaintiff falsely represented to appellee that in order to effect the consolidation of the two Texas associations it was absolutely necessary for defendant to pay Brymer, the secretary of the Texas Plains Association, the sum of $6,000 in cash for his operating contract with said association. That appellee believed plaintiff's representations and relied upon the same and, without knowledge of the falsity thereof, paid Brymer the sum of $6,000 for his operating contract. That the purchase of said operating contract was necessary in effecting a consolidation and, while relying upon plaintiff's false representations, appellee paid Brymer $6,000 in cash. That long after said payment, and after the merger of the two associations, appellee learned that plaintiff had perpetrated a fraud upon it, in that it was not necessary to pay Brymer $6,000 in order to acquire his operating contract. That in fact and in truth Brymer only demanded the sum of $5,000 for his contract, and appellee alleges that the extra $1,000 was required by plaintiff to be paid to him by Brymer and that such payment was kept concealed from the appellee. "In other words, this defendant (appellee) represented that at a time when plaintiff was purporting to act as its agent in the matter of seeking a consolidation of the two associations last named and the issuance of reserve fund stock by the Texas Plains Building Association and the acquiring of such stock by this defendant (appellee) and at a time when plaintiff was in law and good morals bound to show toward this defendant the utmost good faith and to act solely for its best interest, that the said plaintiff himself commanded and directed the said Brymer to inform this defendant (appellee) that he, Brymer, was charging $6,000.00 for his operating contract."

It is further alleged that this fraudulent agreement was carried out between plaintiff and Brymer and that plaintiff received $1,000 of the $6,000 which appellee was fraudulently induced by plaintiff to pay Brymer.

The next special defense was that the only compensation of any kind ever requested by plaintiff was that he desired to be manager of the consolidated building and loan association so that he might obtain a permanent position, and that following the merger, plaintiff was made manager and continued to serve until he voluntarily resigned.

By supplemental petition the appellant alleged that Allen had authority to bind appellee in entering into the contract; that appellee's officers had actual knowledge of the fact that plaintiff was rendering the services for which he claims compensation and accepted plaintiff's services with knowledge that he was expecting to be compensated therefor and was thereby estopped. He specially denied all of the allegations with reference to the transaction with Brymer and alleged that the purchase and sale of Brymer's contract was the result of negotiations between Brymer and Allen, at which time appellee required Brymer to agree to devote his time and energies toward closing up the consolidation of the two associations and the consummation of the entire scheme, and that this required a great deal of detail work upon the part of Brymer. That Brymer agreed to pay plaintiff $1,000 for the latter's work in assisting him in effecting the consolidation. That the $6,000 did not represent the consideration for Brymer's contract alone, but was also consideration to Brymer for his services rendered with the assistance of plaintiff, in perfecting the consolidation.

The verdict of the jury, in response to special issues, is, in substance, that Allen requested plaintiff to perform the services, promising to compensate him in money. That plaintiff relied upon such promises and found the two Texas companies willing to be converted into reserve fund associations, informed Allen of that fact, and that appellee acting upon such information, accepted the services of plaintiff, and the merger was effected. That Allen was authorized by appellee to contract with plaintiff for his services and to compensate him in money and that appellee knew of such contract. That the reasonable value of plaintiff's services was $3,750, with interest from July 20, 1930. That appellant understood from Allen that his compensation would have to be determined by the board of directors of the Colonial Holding Corporation and would be compensated only in the event of the approval of the amount by said board of directors. That Brymer told plaintiff prior to plaintiff's telegram of May 14, 1930, to Allen, that he (Brymer) was asking only $5,000 for his operating contract

with the Texas Plains Association. That prior to the time plaintiff sent said telegram of May 14, 1930, to Allen reporting that Brymer's contract was priced at $6,000, plaintiff had told Brymer to ask $6,000 for the contract and that $1,000 thereof should be paid by Brymer to plaintiff for the latter's services in effecting the merger. That prior to the signing of the contract dated May 17, 1930, appellant had demanded and received from Brymer said $1,000 of the money which appellee had paid Brymer. That at the time Allen and Brymer agreed relative to the transfer of the operating contract by Brymer, it was understood that Brymer should devote his time and energy on behalf of appellee in working out and closing up the details of the consolidation, and that this was part of the consideration for the $6,000 paid to Brymer. That Allen did not agree to pay Brymer $6,000 before he asked Brymer to render future services to him in bringing about a consolidation of the Texas companies. That it was not agreed between appellant and appellee that appellant's compensation should be the procurement by appellee of appellant's appointment as general manager of the Texas Plains Building & Loan Association. That plaintiff did not agree to accept such position as full compensation for his services. That plaintiff's duties, under his agreement with Allen to find associations in the Panhandle, were performed when plaintiff found the Texas Plains and the Amarillo Associations as prospects to be converted into reserve fund associations.

Based upon the verdict the court rendered judgment that appellant take nothing.

■ The appellant insists that upon the last finding of the jury, to the effect that when he found two associations which were willing to enter into the combination, he had performed the obligations of the contract and was entitled to recover.

In the first place, this issue should not have been submitted to the jury, because the rule is that when the facts are undisputed, the question of whether or not they constitute a performance or a breach of the contract is one of law for the court. 13 C. J. 790, § 1041. There is no conflict in the testimony as to the extent of the services performed by Crane; and as stated in 13 C. J. and elsewhere, the question of whether there has been a performance or a breach of a contract when the evidence is undisputed is a matter of law for the court.

■ In the second place, the appellant pleads over and over again that under his contract with Allen he was to do these three things: (1) Seek out and find building and loan associations, especially in the Panhandle, willing to sell their reserve fund stock to the defendant; (2) to make a complete investigation of the condition of such associa-

tions; and (3) report the result of his investigations to the defendant. Manifestly, his services would be worthless to defendant if any part of the obligations resting upon him were not performed, and the general rule is that a party suing upon a contract must recover upon the identical contract alleged or not at all. In so far as his right to recover upon the express contract is concerned, he must show by his testimony that he has discharged the obligations in full which rested upon him or he cannot recover. Hillmer v. Asher (Tex. Com. App.) 29 S.W.(2d) 1011; McConnell v. Payne & Winfrey (Tex. Civ. App.) 229 S. W. 355; Morris v. Kasling, 79 Tex. 141, 15 S. W. 226, 11 L. R. A. 398.

 The next contention is that the court erred in submitting special issues 9a and 9b, inquiring whether Crane understood that the amount of his compensation in helping to bring about the merger of the associations would have to be determined by the board of directors of the Colonial Holding Corporation and whether he understood from Allen that he would receive compensation only in the event the Colonial Holding Corporation approved the amount. We think these issues are immaterial and, if so, their submission and the findings based thereon constitute harmless error. The appellee was not bound by Crane's understanding. The inquiry must necessarily be: What was the contract? Appellee could prove altogether a different contract under a general denial, and the authorities cited by appellant have no application to the question presented. The defendant may plead as many different inconsistent defenses as he desires.

 Crane pleaded the fact of his agency as a basis of his right to recover and it was not necessary for the appellee to plead it.

 The allegations of the answer are sufficient to charge both actual and constructive fraud on the part of Crane with reference to the $1,000 which he obtained from the appellee through Brymer. 20 Tex. Jur. 135, § 91; Hickernell v. Gregory (Tex. Civ. App.) 224 S. W. 691.

The agency of Crane in the matter of the merger and all acts and things necessary to be done to effect it was clearly shown by the evidence, and especially by the letters and telegrams which were exchanged between Crane and the appellee acting through its officers.

 In his brief appellant attacks numerous special issues which were submitted by the court, but the record discloses that he filed no objections in the trial court to any of them, and is therefore conclusively presumed to have approved the charge. We have, however, considered the objections urged in the brief to several of the issues.

 The suggestion that Crane acted as a middleman and not as a broker in effecting the merger is without support in the pleadings or evidence. The idea of a middleman seems to have been an afterthought. A "middleman" is one who merely brings the parties together in order to enable them to make their own contracts. The facts in this case show that Crane was the active agent of the defendant. He alleged that he was employed to search out and find building associations in Texas, and especially in the Panhandle, which would be willing to enter into the proposed combination, and he further bound himself to investigate the condition of such associations as he might find and report their financial condition to Allen. He alleges that he did these things and the purpose of this suit is to recover compensation, not as a middleman, but as the agent of the appellee. An agent must be faithful to his principal and his right to compensation calls for the exercise of the utmost good faith on his part. He must not participate in any fraud nor be a party to any misrepresentation which results in deceiving his principal. Moreover, he is bound to disclose to his principal all material facts coming to his knowledge which affect the transaction. He cannot act for both parties without the full knowledge and consent of both. This is an ancient rule, founded upon public policy, and compliance therewith is a condition precedent to his right to recover. Leake v. Scaief (Tex. Civ. App.) 140 S. W. 814; Allen v. Roach (Tex. Com. App.) 292 S. W. 195, 197.

In 14 A. L. R. 474, it is said: " 'If he [the broker] takes * * * any part in the negotiations * * * he cannot be regarded as a mere middleman, no matter how slight a part it may be.' * * * To be a mere middleman the agent must not be invested with the least discretion, and the first employer must have no right to rely on obtaining the benefit of his judgment."

The rule is stated in 4 R. C. L. 330, § 65, as follows: "A broker is a middleman, within the meaning of this exception, when he has no duty to perform but to bring the parties together, leaving them to negotiate and come to an agreement themselves without any aid from him. If he takes any part in the negotiations, he cannot be regarded as a middleman, no matter how slight a part it may be."

 It must be admitted that under the first several findings by the jury, in the absence of any findings upon the issue of double agency and fraud, Crane would have been entitled to a judgment, but the court would not have been justified in rendering a judgment in his favor and could not have done so without disregarding the findings upon the issue of fraud and dual agency. The genesis of the merger transaction, as shown by the

record, lies in Crane's telegram of May 14, 1930, to J. C. Allen, in which he says that the assets of the Texas Plains Association can be taken over, that its loans are in good shape, and contains this statement, "Operating contract $6,000.00," as a part of the consideration for absorbing that association. Notwithstanding appellant's efforts to show that the $1,000 was to, in a measure, compensate him for his services in working out the details of the merger, the jury disregarded all such testimony and believed the unequivocal statement of Brymer that he was willing to take $5,000 for his operating contract and that he added the $1,000 at the request of Crane and with the understanding that when the $6,000 was received, $1,000 should be paid to Crane. This transaction was kept secret and concealed from the principal until after the deal was practically consummated. No clearer case of fraud could well be established. By its findings the jury has settled that question.

The court correctly entered a judgment for the defendant, and it is affirmed.