FEDERAL SIGN COMPANY OF TEXAS, Appellant,

v.

FORT WORTH MOTORS, Inc., Appellee.

No. 15916.

Court of Civil Appeals of Texas.

Fort Worth.

June 6, 1958.

Rehearing Denied July 11, 1958.

879

Shields, Jones & Whittington, and Charles O. Shields, Dallas, for appellant.

Obel L. McAlister, Fort Worth, for appellee.

BOYD, Justice.

Federal Sign Company of Texas appeals from a judgment in a suit filed by it against Fort Worth Motors, Inc., for damages for the alleged breach of a contract to pay for the installation and maintenance of signs and other equipment, for attorney's fees, and for recovery of certain signs and equipment furnished by appellant to appellee under the terms of two lease and maintenance agreements between the parties, referred to as Contract No. 1377 and Contract No. 1378. Appellee filed a cross-action for loss of profits due to lack of advertising while the sign erected by appellant under Contract No. 1377 was not operating.

Trial was to the court, and judgment was rendered for appellant for damages on Contract No. 1378 in the amount of $1,634.98, and for $400 attorney's fees; but credit was given on the recovery on account of an overpayment made by appellee on Contract No. 1377, which the court found had been breached by appellant, reducing the total judgment to $1,780.68. It was decreed that the signs and other equipment furnished by appellant under both contracts be returned to appellant. Recovery was denied on appellee's cross-action.

Appellant's principal contention is that the court erred in holding that Contract No. 1377 was breached by appellant, and in not holding that it was breached by appellee. We think the evidence warrants the conclusion that appellant breached the contract.

Under that contract, appellant had reconditioned a pylon tower on appellee's building, performed modifications on a sign situated thereon, fabricated and installed two small signs on a canopy of appellee's

showroom, and under a rider to the contract had fabricated and installed additional tubing and electrical equipment on the pylon tower sign. The contract was for a period of five years and appellee was to pay $81 per month in advance. Appellant was required to maintain the signs and other equipment; and should the sign on the pylon tower fail to operate, appellee was to notify appellant in writing, and appellant would, if possible, repair the sign within twenty-four normal working hours after receipt of such notice.

On March 7, 1956, the sign on the pylon structure and the structure itself were blown down during a windstorm. One of appellants representatives was on the premises at the time, and the manager of its Fort Worth branch was there later in the day, and both knew of the damage.

Appellant, by letter of March 27, 1956, agreed to repair and reinstall the sign "if the portion of the tower which did not belong to Federal Sign Company or covered by our maintenance agreement is replaced subject to the damages caused which were not the fault of the Federal Sign Company."

Lockwood, appellee's manager testified that from March 7 to April 23 he had repeatedly asked Chandler, appellant's branch manager, to replace the pylon, and he had refused to replace the sign "because of the fact that he could not make a decision. The decision, as he stated, had to come from the Dallas office, and the Dallas office would not give them a decision"; Chandler testified that in a conversation with Lockwood, "My position was stated, as I didn't know what would be the outcome of it, but I was going to do everything I could to see that it was taken care of as soon as possible." Lockwood further testified that appellant's representatives did not offer to replace the sign, but repeatedly refused to do so.

By letter dated April 23, 1956, Lockwood wrote appellant that since appellant had not informed him of what action it was taking in regard to the pylon tower and sign, appellee considered the contract ter-minated as of the date the sign fell. This letter was sent to appellant's Fort Worth office. It reached appellant's general manager at Dallas on April 27.

About April 23, 24, or 25, appellant's attorney and the manager of its Fort Worth office had a conference with Lockwood, and the attorney stated that it was appellant's understanding that the pylon structure was a part of the building and its falling was the responsibility of the building owner. The attorney testified that Lockwood requested that he be furnished with a letter stating appellant's position. Lockwood's letter dated April 23 had not been posted at the time of the conference.

On April 25, 1956, appellant's attorney wrote Lockwood that appellant " 'assumes all responsibility for the sign falling. In view of this, Federal Sign Company is ready and willing to replace the sign, resume billing your company at the rate of $81 a month when it is operating again, and complete the contract in accordance with its terms.' " Lockwood did not reply to this letter.

On April 30, 1956, appellant's general manager wrote Lockwood that "You are advised that our position is that we are ready to replace the sign immediately and proceed with the contract." No reply was made to this letter. On May 31, 1956, appellant's general manager wrote Lockwood, advising that "we are repairing the sign, have obtained permission from the City of Ft. Worth to re-install the Pylon at the top of the building, and that the sign will be installed at the earliest practicable date." On the same day appellant filed this suit.

Between May 31 and the latter part of July, 1956, appellant repaired the sign and painted and otherwise "went over" the pylon structure. About July 25 appellant's representatives told Lockwood that appellant was ready to install the tower and sign, but Lockwood refused them permission to do so, Lockwood testifying that he told them "a lawsuit had been filed and we were

segmentheader**881**

countersuing and I would not let them put it on the building."

Although Lockwood admitted that in the conference with appellant's attorney he said he did not want the pylon replaced, this was after his letter of April 23 had been written but before it had been posted, in which he insisted that appellant had breached the contract by its failure to take any action on the matter since the sign was blown down. It will be recalled that in this conference appellant's attorney was maintaining that it was not appellant's responsibility to replace the pylon structure.

 We cannot agree with appellant's view that the law as to anticipatory breaches of contracts, as declared in 10–A Tex.Jur., p. 561, sec. 277, controls the disposition of this case. Since appellant was obligated to repair the sign within twenty-four normal working hours, if possible, after notice of the damage, it seems that time was of the essence of the contract. Garrison v. Cooke, 96 Tex. 228, 72 S.W. 54, 61 L.R.A. 342; Hausler v. Harding-Gill Co., Tex.Com.App., 15 S.W.2d 548. The sign was blown down on March 7. It was in the latter part of July that appellant was ready to replace it and the pylon structure, and this was nearly two months after appellant had filed this suit.

"Where one party seeks to enforce performance of a contract or to recover damages for a breach thereof, and the contract contains mutual covenants or requires him to do an act to entitle him to the action, he cannot maintain such action without alleging and proving performance or tender of performance on his part, unless such performance has been excused." Investors' Utility Corporation v. Challacombe, Tex.Civ.App., 39 S.W.2d 175, 179. See, also, Gerlach-Barlow Co. v. Patton, Tex.Civ.App., 281 S.W. 242; Crane v. Colonial Holding Corporation, Tex.Civ. App., 57 S.W.2d 316.

In its answer appellee admitted that the two small signs erected by appellant under Contract No. 1377 were not damaged, and that the reasonable value of their use was $235. This admission binds appellee, and we think appellant should have judgment for that amount in addition to the recovery allowed by the trial court.

We have considered all other points presented by appellant, but think reversible error is not shown by any of them.

The judgment is reformed so as to include recovery by appellant for the additional amount of $235; and, as reformed, the judgment is affirmed. The costs of the appeal are adjudged one-half against appellant and one-half against appellee.