**D. W. LEWTER et al., Appellants,**

**v.**

**Charles PARKER, D/B/A Plains Manufacturing & Equipment Company, Appellee.**

**No. 7102.**

Court of Civil Appeals of Texas. Amarillo.

Feb. 19, 1962.

Rehearing Denied March 26, 1962.

Crenshaw, Dupree & Milam, Lubbock, for appellants.

Wagonseller & Cobb, Lubbock, for appellee.

NORTHCUTT, Justice.

This is a suit brought by Mr. Charles Parker, hereafter referred to as appellee, against Mr. D. W. Lewter, et al., hereafter referred to as appellants, to recover the contract price under the terms of a contract for the construction of a vacuum air lift.

The air lift was constructed by appellee at appellants' place of business for the purpose of lifting various types of meal, etc. from trucks into storage tanks or bins. The principal issue here involved is whether appellee installed a vacuum air lift capable of lifting as much as 1000 pounds of cottonseed meal per minute to the storage bin over a reasonably continuous period if competently operated.

The case was submitted to a jury upon 4 Special Issues. The first issue inquired if the vacuum air lift installed by appellee was capable of lifting as much as 1000 pounds of cottonseed meal per minute to the storage bins over a reasonably continuous period if competently operated. The jury answered "yes." The trial court found that the answers of the jury to issue No. 2 was not supported by the evidence, and by so holding, Issues Nos. 2 and 3 were not further considered and are not here involved. Issue No. 4 was to be answered only if the jury answered Issue No. 1 "no." Consequently, the judgment of the court was rendered solely upon the answer of the jury to Issue No. 1.

The appellee agreed to construct a vacuum air lift capable of lifting as much as 1000 pounds of cottonseed meal per minute to the storage bins and testified this was to continue over a reasonably continuous period, if competently operated, and to install proper electric switches and place the wiring in conduits. The appellee never installed the electric switches and did not place the wiring in conduits. Since appellants had informed the appellee that they would not accept the air lift because it would not deliver 1000 pounds as contracted, and appellee contending the air lift would deliver the 1000 pounds as contracted, we are of the opinion that if appellants were not going to pay appellee even if he did install the switch and place the wiring in conduits, that would be a useless thing for appellee to do. The appellee testified that it would cost $1,536.71 to install the switch and enclose the wires in conduits and ask the court to deduct that amount from the contract price of $10,000.00. The court granted appellee judgment for the $10,000.00, less the $1,536.71, and also other relief not necessary to consider here. From that judgment the appellants perfected this appeal.

The appellee seems to have totally abandoned the project in its present condition and insists that the air lift will de-

liver the 1000 pounds per minute as he had contracted to do. A contract to furnish an air lift to deliver 1000 pounds per minute is not performed by furnishing an air lift that will only lift from 500 to 600 pounds per minute. Hall v. Nunn Electric Co. et al., Tex.Civ.App., 183 S.W. 13; Uvalde Rock Asphalt Co. v. Fantham et al., Tex.Civ.App., 210 S.W.2d 646; American Water Co. et al. v. Bunge et al., Tex. Civ.App., 213 S.W.2d 93 (Writ Refused N.R.E.); Cotherman v. Oriental Oil Co., Tex.Civ.App., 272 S.W. 616.

The main issue to be here determined is whether there is any evidence or at least sufficient evidence to sustain the findings of the jury that appellee had complied with his contract to install an air lift capable of lifting at least 1000 pounds of cottonseed meal per minute and put into proper bins or storage tanks. Appellee acknowledged that the contract required him to install an air lift capable of lifting 1000 pounds as covered by Special Issue No. 1 above mentioned, and to average 1000 pounds per minute to unload a truck, providing it was fed right. Appellee testified the mill foreman told him that each foot across the bed of the truck would be approximately 1000 pounds. The court sustained an objection as to what the foreman said and instructed the jury not to consider it. Based upon that information, the appellee testified one time he pulled off 6 feet of meal in 5 minutes which would average over 1000 pounds per minute. There is some evidence as to the length of the truck beds being 34 feet long and the weight of the meal per load being from 30,000 to 36,000 pounds. The only evidence shown where appellee unloaded a full truck load of meal was at the average per minute of 500 pounds. One of the appellants testified that in a 5 minute period, in the beginning, you could get 1000 pounds but for 10 minutes you could not and 20 minutes it would be even less.

Under this record it was clearly understood, even before the contract was entered into, that if the air lift did not deliver 1000 pounds per minute it would be worthless to appellants. The appellee testified that in his first talk with appellants' supervisor and equipment engineer he was told that it would not do them any good unless the air lift would produce at the rate of 1000 pounds per minute, and if it was less than that, it would not serve their purpose and they didn't want it.

■ It was required of appellee to plead and show by testimony that he complied with the terms of the contract to furnish an air lift capable of delivering 1000 pounds per minute. It is stated in the case of Crane v. Colonial Holding Corporation, Tex.Civ.App., 57 S.W.2d 316, as follows:

"Manifestly, his services would be worthless to defendant if any part of the obligation resting upon him were not performed, and the general rule is that a party suing upon a contract must recover upon the identical contract alleged or not at all. In so far as his right to recover upon the express contract is concerned, he must show by his testimony that he has discharged the obligations in full which rested upon him or he cannot recover. Hillmer v. Asher (Tex.Com.App.) 29 S.W.(2d) 1011; McConnell v. Payne & Winfrey (Tex.Civ.App.) 229 S.W. 355; Morris v. Kasling, 79 Tex. 141, 15 S.W. 226, 11 L.R.A. 398."

To the same effect is the case of Federal Sign Company of Texas v. Fort Worth Motors, Inc., Tex.Civ.App., 314 S.W.2d 878, where it is stated:

" 'Where one party seeks to enforce performance of a contract or to recover damages for a breach thereof, and the contract contains mutual covenants or requires him to do an act to entitle him to the action, he cannot maintain such action without alleging and proving performance or tender of performance on his part, unless such performance has been excused.' In-

vestors' Utility Corporation v. Challacombe, Tex.Civ.App., 39 S.W.2d 175, 179. See, also, Gerlach-Barlow Co. v. Patton, Tex.Civ.App., 281 S.W. 242; Crane v. Colonial Holding Corporation, Tex.Civ.App., 57 S.W.2d 316."

We are of the opinion and so hold that the evidence in this case was insufficient to sustain the findings of the jury in answer to Issue No. 1. Judgment of the trial court is reversed and remanded.