Ira C. LITTLE, Sr., Appellant,

v.

Jack PERRY, Appellee.

No. 16805.

Court of Civil Appeals of Texas.

Dallas.

Nov. 18, 1966.

Rehearing Denied Dec. 23, 1966.

Wynne, Jaffe & Tinsley, and Yandell Rogers, Dallas, for appellant.

Bracewell & Patterson, Joseph Jaworski, R. Craig Parker, Houston, for appellee.

CLAUDE WILLIAMS, Justice.

Contract action. Jack Perry brought this suit against Ira C. Little, Sr. seeking damages allegedly resulting from a breach by Little of a written agreement to purchase 5,000 shares of stock from Perry. The trial judge granted Little's motion for summary judgment from which decree an appeal was perfected. Upon equalization of the dockets of the Courts of Civil Appeals by the Supreme Court the matter was referred to and decided by the Tyler Court of Civil Appeals. That court held that issues of fact were presented and that the cause should be reversed and remanded. See Perry v. Little, Tex. Civ.App., 377 S.W.2d 765.

Following remand the case was tried before a jury and special issues were answered favorable to Perry. Judgment for $30,870.91 was rendered against Little who brings this appeal.

In his trial petition appellee Perry alleged that he was the owner of Certificate No. 109 issued by the Medical Specialties Sales Corporation of Dallas, Texas, which represents 5,000 shares of the common stock of said corporation; that on the 11th day of July, 1961 he and appellant Little, for a valuable consideration, made a written agreement whereby Little agreed to purchase the stock from Perry at the price of $5.00 per share provided that one C. W. Deaton had not exercised his right to purchase said stock and if Perry was holding same on January 22, 1962. The letter agreement relied upon by Perry and introduced in evidence provides:

"July 11, 1961

"Mr. Jack Perry
"806 Waugh Drive
"Houston, Texas

"Dear Sir:

"This is to advise that you are holding 5,000 shares of Medical Specialties Sales Corporation stock which I will purchase from you at $5.00 per share on January 22, 1962. This commitment to purchase is good in the event you are holding the stock on this date.

"It is further understood that C. W. Deaton has the right to pick up this stock

from you on or before January 22, 1962 at $5.00 per share.

"In the event Mr. Deaton should want to pick up this stock from you, I want you to have him procure a letter in writing from me before you release the stock.

"Yours very truly,
"I. C. Little /s/
"I. C. Little"

In his petition Perry says that:

"Plaintiff accepted such contract orally in a telephone conversation with Defendant subsequent to the date the agreement was written and signed by Defendant; and, thereupon, both parties mutually agreed to the terms and conditions stated therein."

At the trial appellee Perry testified that this letter was delivered to him in Houston by Mr. C. W. Deaton, in person, and that at about 12:00 noon on July 12, 1961 he telephoned appellant Little in Dallas. During this conversation he said he told Little that he would accept the contract. Little testified that he had two telephone conversations with Perry on July 12, 1961, neither of which was at noon, and that such conversations related to a conditional delivery of the letter to Perry. He denied positively that Perry told him he would accept the contract terms.

It is uncontroverted that there was no further communication between the parties until January 23, 1962 when Perry wrote Little, as follows:

"January 23, 1962

"Mr. I. C. Little
"I. C. Little Contractors
"Suite 603
"Fidelity Union Life Building
"Dallas, Texas

"Dear Mr. Little:

"In accordance with your letter of July 11, 1961, I am writing you to let you know that I am holding 5,000 of Medical Specialties Sales Corporation stock which you have agreed to purchase from me at $5. per share.

"I am also informing Mr. C. W. Deaton of the due date in case he wants to exercise his option to pick it up.

"I am looking forward to hearing from you regarding this matter.

"Sincerely,
"Jack Perry"

The record is silent as to any reply by Little or any communication between the parties until January 26, 1962 when Perry's attorney, E. Mitchell Smith, Jr. of Houston, Texas, wrote Little the following letter:

"January 26, 1962

"Mr. I. C. Little
"I. C. Little Contractors
"Suite 603
"Fidelity Union Life Building
"Dallas, Texas

"Dear Mr. Little:

"It was certainly nice to talk to you yesterday while in Dallas. I am sorry that it involved such unpleasant subject matter.

"I did want to take the opportunity to discuss with you regarding your letter of July 11, 1961. As you know your letter states that you will purchase from Mr. Jack Perry five-thousand (5,000) shares of Medical Specialties Sales Corporation stock for $5. per share. Relying upon this letter and upon your long distance telephone call to Mr. Perry, along with your excellent credit report, Mr. Perry, as an innocent party, loaned money to C. W. Deaton.

"I am sure you are aware of the legal implications of this letter. I am equally sure that, should the situation present itself, you will live up to the excellent business reputation you have.

"Either Mr. Perry or I will be in touch with you the first of next week regarding this matter. In the meantime

we will be trying to reach Mr. Deaton to see what his intentions are.

"Again it was certainly a pleasure to talk with you yesterday, and I am looking forward to meeting you soon.

"With kindest personal regards, I am

"Sincerely,
"Mickey Smith /s/
"Mickey Smith"

Prior to the submission of the court's charge to the jury appellant Little objected to same because it did not contain an issue inquiring whether Perry's acceptance of the offer was ever communicated to Little or whether Perry had made a tender of the shares of stock to Little either on January 22, 1962 or at any time prior to the filing of this action. The court overruled appeliant's objections and did not submit either issue to the jury.

In his first two points of error appellant contends that under the terms of the contract sued upon time was of the essence and since there was no evidence or jury finding that appellee Perry performed, or tendered performance of the contract sued upon, either on the day provided for in said contract or at any other time subsequent thereto, the trial court erred in rendering judgment for breach of the contract.

We think that the Court of Civil Appeals at Tyler in its opinion deciding the first appeal of this case correctly summarized the contract in question as "an offer to purchase a certain amount of stock at a fixed price and at a specified time, in the event certain contingencies came to pass." Perry v. Little, Tex.Civ.App., 377 S.W.2d 765. The contract between the parties consisted of a promise on the part of Little to purchase and pay for shares of stock, and a mutual and dependent promise on the part of Perry to sell and deliver the shares. These mutual obligations were obviously, according to the terms of the agreement, to be performed simultaneously. Being mutual and depend-

ent promises it is elementary that neither party would have been able to maintain an action upon such contract without first performing, or tendering performance. Investors' Utility Corp. v. Challacombe, Tex. Civ.App., 39 S.W.2d 175; Federal Sign Co. of Texas v. Fort Worth Motors, Tex. Civ.App., 314 S.W.2d 878; Lewter v. Parker, Tex.Civ.App., 354 S.W.2d 945; 13 Tex. Jur.2d Contracts, § 284, p. 521; 17A C.J.S. Contracts § 344, p. 334.

We think that it is obvious that from a study of this contract that time was, indeed, of the essence. While it is true that under ordinary circumstances time is not of the essence of a contract, in the case of contracts for the sale of personalty time is generally deemed to be of the essence of the agreement. 13 Tex.Jur.2d, Contracts, § 288, p. 526, § 289, p. 528. This rule is even more applicable where, as here, the personal property involved is subject to rapidly fluctuating value. Taylor Milling Co. v. American Bag Co., Tex.Civ.App., 230 S.W. 782; Von Harten & Clark v. Nevels, Tex.Civ.App., 234 S.W. 676; United Irrigation Co. v. Carson Petroleum Co., Tex.Civ.App., 283 S.W. 692; 13 Tex.Jur.2d, Contracts, § 289, p. 529. Moreover, whether or not time is of the essence of the contract depends on the intention of the parties, same being determined from the language used in the agreement as well as from the circumstances attending its making. The contract between the parties is plain and specific that the performance date is January 22, 1962. Even assuming Deaton's option to purchase the shares not later than midnight. of January 22, 1962, his failure to exercise such option would, in the light of the overall terms of the agreement, cause the time for performance of selling or purchase to be immediately after midnight on that date.

There can be no doubt that Perry, seeking to legally enforce the contract, must both plead and prove a tender of performance on his part. Investors' Utility

Corp. v. Challacombe, Tex.Civ.App., 39 S.W.2d 175; 13 Tex.Jur.2d, Contracts, § 284, p. 521. We think the obligation of Perry to establish tender of performance is even more strict in law since we are here dealing with chattels of fluctuating value. "A promise to pay in chattels, or in anything of a fluctuating value, must be strictly complied with as to time, and a tender of the thing to be paid cannot be made before or after the day fixed for payment." 17A C.J.S. Contracts § 482, p. 682.

■ The question of the sufficiency of tender in this case is governed by well established rules of law. The tender must be definite and certain. It is not enough for the party seeking to enforce the contract for its breach to show only that he had merely informed the other party of his readiness to perform. 13 Tex.Jur.2d, Contracts, § 284, p. 521; Richey v. Stanley, Tex.Civ.App., 38 S.W.2d 1104.

■ Also, to constitute a valid tender the thing to be tendered must be actually produced and offered to the party entitled thereto. Cornelius v. Cook, Tex.Civ.App., 213 S.W.2d 767; Johnson Mfg. Co. v. Edwards, Tex.Civ.App., 344 S.W.2d 506.

■ This court, speaking through Justice Bateman, in Cockrum v. Cal-Zona Corp., 373 S.W.2d 572, reiterated the rule previously announced that a valid tender is not accomplished until the tenderer places the property in such a position that his control over it is relinquished for a sufficient time to enable the tenderee, if he so desires, to reduce it to possession by merely reaching out and laying hold of the property; and a person is not bound to say whether he will accept the property until it is so produced.

■ Viewed in the light of these well established principles of law it is our judgment that the record fails to support appellee's contention that he made a valid tender of the shares to appellant either on or immediately after January 22, 1962 or at any time prior to the filing of the suit. It is undisputed that from July 12, 1961 through and including January 22, 1962 Perry had no communication, either oral or written, with Little. By his letter dated January 23, 1962 Perry did nothing more than advise Little that he was "holding 5,000 shares of Medical Specialties Sales Corporation stock" and that he was informing C. W. Deaton, in case Deaton wanted "to pick it up." Further, in the letter from appellee's attorney, Smith, several days later, he says nothing more than that he feels "equally sure that, should the situation present itself, you will live up to the excellent business reputation you have." He also says that "In the meantime we will be trying to reach Mr. Deaton to see what his intentions are." We find nothing in this letter to lead to the conclusion that such constituted a tender as contemplated by the law. Instead, the impression is left from such letter that Deaton still had some rights and that the performance of the contract depended on his exercise thereof.

■ Material to the question of tender is also the question of place of performance. It is a general rule of law that in any contract requiring the payment of money, the place of payment is ordinarily regarded to be the domicile of the payor, if the contract says nothing about the place of payment. 13 Tex.Jur.2d, § 298, p. 545; Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101; Texas Gas Products Corp. v. Rowan, Tex.Civ.App., 317 S.W.2d 815. Since the agreement in this case is silent as to the place of performance it would seem evident that Perry's tender and the payment of money for the shares would necessarily be in Dallas, Little's residence.

Concluding, as we do, that Perry has completely failed to establish his burden of proving and securing a jury finding as to a valid tender of the shares in question either on or about the date agreed upon

for performance, or at any other time prior to the filing of this suit, it was obvious that the trial court erred in rendering judgment against Little for breach of the agreement.

Appellant's points 1 and 2 are sustained.

By his points 3 and 4 appellant complains of the failure of the court to submit to the jury an issue as to whether any alleged acceptance of the offer stated in the letter of July 11, 1961, was ever communicated to Little. We agree with appellant and sustain these points.

Special Issue No. 1, as submitted to the jury, inquired as to whether Perry agreed to and accepted Little's offer contained in his letter of July 11, 1961, to which the jury answered "Yes." Prior to submitting the case to the jury appellant Little objected to the failure of the court to submit an issue as to whether such acceptance was ever communicated to Little.

The testimony, as above related, is sharply in dispute on the question of communication of acceptance of the offer. Perry, as well as other witnesses, testified that he telephoned Little in Dallas from Houston and advised him that he was accepting the offer contained in the letter of July 11, 1961 delivered by Deaton. On the other hand, Little positively denied that Perry communicated acceptance to him in any telephone conversation.

It is elementary that in order to form a binding contract it must appear that the party to whom the offer is made not only accepts the offer but communicates such acceptance to the person making the offer. American Nat'l Ins. Co. v. Warnock, 131 Tex. 457, 114 S.W.2d 1161, 1164.

The issue of communication of acceptance was raised by appellee's pleadings and his evidence. The issue was one necessary to establish appellee's cause of action. Appellee therefore had the burden of securing the submission of an appropriate issue. Appellant was not obligated to request the submission of an

issue in substantially correct verbiage. His complaint, timely made, is sufficient to preserve the point. Rule 279, Vernon's Texas Rules of Civil Procedure.

For the reasons stated, the judgment of the trial court is here reversed and rendered that appellee take nothing against appellant.

Reversed and rendered.