EDMUND H. DUCHEMIN *vs.* CHARLES B. KENDALL.

Suffolk.   March 6, 1889. — May 9, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Contract to sell Shares of Stock — Stock-Jobbing — Equitable Ownership —
Consideration — Option — Tender — Notice — Offer to perform.*

The equitable owner of shares of stock, held for him on a naked trust, consented
to his trustee's assigning or agreeing to assign them to trustees, to sell and ac-
count to the owner for the proceeds, or if not sold within a year to return them
to him, his representatives or assigns.  On August 9, 1886, before such sale or
return of the shares, a person agreed with such owner to take the shares at the
end of a year at the owner's option, if he failed to secure a bid for the stock
within that time.  On the evening of August 8, 1887, the owner mailed a letter
to such person, which in due course of mail would reach him on the next day,
notifying him that he expected him to take the stock according to the agree-
ment.  No reply was made to the letter, although received, and three days
later, upon formal demand by the owner for the price and a tender of the
stock which had been returned to him, such person refused to take it or pay
the money.  *Held,* that the agreement was valid and rested upon sufficient con
sideration, that the owner was not obliged to make a tender *ad diem,* and that
the notice of his election and the offer to perform were sufficient.

CONTRACT for breach of the following agreement in writing.
"For one dollar and other valuable considerations, the receipt
whereof is hereby acknowledged, I hereby bind myself to secure
to E. H. Duchemin a *bona fide* bid of five thousand dollars, for
five hundred shares of the Addax Basting Machine Company's
stocks, within twelve months from this date.  In case of failure
so to do, I hereby agree to take from him, at his option, said
five hundred shares of stock, for five thousand dollars, one year
from the date hereof.  Given this ninth day of August, A. D.
1886.  C. B. Kendall.  Boston, Mass., August 9, 1886."  Writ
dated August 13, 1887.

Trial in the Superior Court, without a jury, before *Barker*, J.,
who found for the defendant, and reported the case for the
determination of this court, in substance as follows.

On October 23, 1885, the plaintiff became the owner of one
thousand shares of stock in the Addax Basting Machine Com-
pany by the indorsement of a certificate for such shares to him.
On or about March 10, 1886, he transferred his certificate of such

shares to one Bayley, and received from him a receipt which recited that Bayley was to hold the shares subject to the plaintiff's order for three months from that date. Bayley was simply a naked trustee for the plaintiff in all his dealings with such shares of stock. He subsequently, and without the knowledge of the plaintiff, surrendered the certificate to the company, and received in lieu of it another certificate for such one thousand shares of stock in his own name.

On or about April 2, 1886, Bayley, with the knowledge and consent of the plaintiff, assigned and transferred the new certificate to the defendant and James F. Bliss, who held it as trustees under a certain trust agreement dated February 27, 1886, entered into between them and certain stockholders in the Addax Basting Machine Company, by which, in consideration of the transfer and assignment of such stockholders' shares of stock to them as trustees, the defendant and Bliss agreed " to exert their best efforts to effect sales of the stock so placed in trust, and pay over to the parties of the second part the proceeds of such sales in *pro rata* proportion. All shares not sold at the end of one year from this date shall be returned to their respective owners, their representatives or assigns."

Bayley and other stockholders signed the above agreement, and subsequently, on April 15, 1886, the defendant and Bliss gave to Bayley a receipt for the one thousand shares, reciting that they held the shares under the trust agreement, which receipt Bayley thereupon transferred by indorsement in blank to the plaintiff.

On August 9, 1886, the defendant executed and delivered to the plaintiff the agreement in question, the consideration of which was an agreement by the plaintiff to sell to the defendant five hundred shares of the stock, represented by the trustees' receipt then held by the plaintiff by transfer from Bayley, at one dollar per share, and the execution of the agreement to sell, on the part of the plaintiff, by delivering to the defendant the trustees' receipt for one thousand shares, and receiving from him a like receipt signed by the trustees for five hundred shares and five hundred dollars in cash. At this time the defendant was treasurer of said company. The trustees' receipt for five hundred shares, given by the defendant to the plaintiff on August 9,

1886, was held by him until about March 16, 1887, when he surrendered it to the trustees, and received a certificate from the company for five hundred shares of stock in his own name. This certificate he held until on or about December 3, 1887, when he exchanged the same for a certificate of five hundred shares in the Addax Basting and Stitching Machine Company, the successor to the property of the former company, which last certificate he now holds.

On the evening of August 8, 1887, the plaintiff mailed a letter from Newburyport to the defendant, directed to his usual place of business in Boston, as follows: " Newburyport, August 9, 1887. Mr. C. B. Kendall: Dear Sir, — Please let me know when you will take the Addax Basting Machine stock, as per agreement of August 9, 1886. An early reply will oblige. Yours truly, E. H. Duchemin, 12 Strong Street." This letter was received by the defendant, but no reply was received by the plaintiff.

On or about August 13, 1887, the plaintiff's agent called upon the defendant and tendered him the certificate of five hundred shares of stock in the Addax Basting Machine Company, on behalf of the plaintiff, and demanded of him the five thousand dollars due therefor to the plaintiff, under his agreement. The defendant refused to take the stock and pay the money; nor has he since taken the stock or paid the money therefor, or any part thereof; nor has the defendant obtained for the plaintiff a *bona fide* bid of ten dollars per share for said stock for the plaintiff. The market value of the stock on August 9, 1887, was one dollar per share, and did not change up to the time of the tender by the plaintiff's agent, on August 13, 1887, and the date of the writ in this action. The plaintiff never owned any other stock in the company, and no certificate was ever issued to him other than what appears in the above statement; and no part of the one thousand shares of stock held by the defendant and Bliss, under the trust agreement mentioned above, was sold by them during the continuance of said trust.

If upon the above facts the plaintiff was entitled to recover, judgment was to be rendered for the sum of $4,500, and interest; otherwise, judgment for the defendant.

*C. M. Perry*, for the plaintiff.

*A. Eastman*, for the defendant.

MORTON, C. J. By the contract sued on, the defendant agrees to secure to the plaintiff a *bona fide* bid of five thousand dollars for five hundred shares of the Addax Basting Machine Company's stock, within twelve months from date; or, in case of failure to do so, to take from him at his option said five hundred shares of stock for five thousand dollars in one year from date. The contract is dated August 9, 1886. At this time the plaintiff was the equitable owner of one thousand shares of the stock. This stock stood in the name of the defendant and James F. Bliss, who held it in trust for the plaintiff, who had an equitable interest in it, which was assignable, and his agreement to assign and transfer five hundred of such shares to the defendant, and the execution of this agreement, as set out in the report, furnished a sufficient consideration for the agreement sued on.

The defendant contends that this agreement of the plaintiff is void under § 6 of chapter 78 of the Public Statutes. This statute provides that every contract for the sale of stock shall be void unless the party contracting to sell or transfer the same is, at the time of making the contract, the owner or assignee thereof, or authorized by the owner or assignee, or his agent, to sell or transfer the same.

If we construe the report most favorably to the defendant, the facts appear to be as follows. The plaintiff was the equitable owner of one thousand shares of the stock, which stood in the name of Bayley, who was a naked trustee. Bayley, with the consent of the plaintiff, had, by an instrument dated February 27, 1886, a copy of which is annexed to the report, assigned or agreed to assign the said stock to the defendant and Bliss, as trustees, with power to sell it and account to the owner for the proceeds, or if not sold within a year to return it to the owner, his representatives or assigns. The agreement of the plaintiff operated as an agreement to sell five hundred shares of the stock subject to this power. When executed, it transferred to the defendant all the interest which the plaintiff had in such stock. Such must have been the understanding of both parties. The plaintiff had a right thus to sell his interest. He was the owner of it, and fully authorized to make the sale which he did. The case does not fall within the letter or the spirit of the statute, the purpose of which was to prevent gambling in stocks.

The defendant further contends, that the plaintiff cannot recover because he did not make a tender of the shares at the end of the year. The defendant's promise was that he would procure a bid of five thousand dollars for the stock within twelve months, or, in case of failure so to do, would take from the plaintiff, at his option, the stock for five thousand dollars, one year from the date of the contract. It would be a too strict and harsh construction of the contract to hold that a technical common law tender *ad diem* was necessary in order to save the rights of the plaintiff. Generally, when a party is to deliver a deed or other transfer upon the payment to him of money, it is enough if he offers and is able to give such deed or transfer, without making a formal tender. *Cook* v. *Doggett,* 2 Allen, 439. *Thorndike* v. *Locke,* 98 Mass. 340. *Carpenter* v. *Holcomb,* 105 Mass. 280.

In this case, the plaintiff, on the evening of August 8, 1887, mailed a letter at Newburyport to the defendant at Boston, notifying him, in substance, that the plaintiff expected him to take the stock according to the agreement. It is to be presumed that this by due course of mail reached the defendant on the 9th of August. He was thus notified that the plaintiff availed himself of the option given him by the contract. He made no reply, and on August 13, the plaintiff's agent called on the defendant, tendered him the stock, and demanded the sum of five thousand dollars. The defendant refused to take the stock and pay the money. The refusal was not put upon the ground that the tender was too late, or that the defendant had suffered any injury by the delay, but seems to have been a general refusal. We do not think that, in the contemplation of the parties, it was an essential element of the contract that the stock should be transferred on the precise day when the year expired, and we are of opinion that the tender by the plaintiff was made within a reasonable time, and was a substantial offer on his part to perform the contract. As the defendant refused absolutely to take the stock, the plaintiff was not obliged to keep it for the defendant, but had the right to treat the contract as broken, and to bring this action for such breach.

*Judgment for the plaintiff.*