Jack PERRY, Petitioner,

v.

Ira C. LITTLE, Jr., Respondent.

No. B–73.

Supreme Court of Texas.

Oct. 4, 1967.

Rehearing Denied Nov. 1, 1967.

Bracewell & Patterson, Joseph Jaworski, Houston, for petitioner.

Wynne, Jaffe & Tinsley, Yandell Rogers, Jr., Dallas, for respondent.

POPE, Justice.

Jack Perry sued Ira C. Little for damages resulting from Little's alleged breach of a contract to purchase five thousand shares of corporate stock from Perry. Perry obtained a judgment against Little

upon a jury verdict for $30,870.91. The court of civil appeals reversed the judgment and rendered judgment that Perry take nothing. 410 S.W.2d 286. We reverse the judgment of the intermediate court and affirm that of the trial court. The questions presented are whether the trial court erred in refusing to submit a special issue which inquired whether Perry communicated his acceptance of a letter offer made by Little, and whether Perry made a timely and proper tender of the shares of stock to Little.

In July, 1961 defendant Little and C. W. Deaton were in business together purchasing stock in the Medical Specialties Sales Corporation of Dallas, Texas. The stock was not listed on any stock exchange. On July 11, 1961, Deaton visited Perry's office in Houston, Texas and offered to sell Perry a five per cent interest in a Bahama bank and five thousand shares of Medical Specialties Sales Corporation stock for the sum of $25,000.00. Perry agreed to accept the offer on the condition that Deaton find some substantial person who would agree to repurchase the five thousand shares of stock from Perry. On that date Deaton returned to Dallas and there obtained a letter from Little to Perry by which Little agreed to purchase the shares of stock for $5.00 per share on January 22, 1962. Little's letter was dated July 11, and Deaton delivered it to Perry in his Houston office about noon on July 12. Little's letter addressed to Perry stated:

"This is to advise that you are holding 5,000 shares of Medical Specialties Sales Corporation stock which I will purchase from you at $5.00 per share on January 22, 1962. This commitment to purchase is good in the event you are holding the stock on this date.

"It is further understood that C. W. Deaton has the right to pick up this stock from you on or before January 22, 1962 at $5.00 per share.

"In the event Mr. Deaton should want to pick up this stock from you, I want you to have him procure a letter in writing from me before you release the stock."

■ One reason for the intermediate court's reversal of the judgment for Perry was that the trial court failed to submit a special issue which inquired whether Perry communicated his acceptance of Little's letter offer. In our opinion, the additional issue was unnecessary. The trial court submitted an issue which asked whether Perry "on July 12, 1961 * * * agreed to and accepted the terms of defendant Little's July, 1961 letter proposal." The jury answered the issue affirmatively. Both Perry and Little testified. Perry said that he phoned Little when Deaton delivered Little's letter about noon on July 12. He said that in the phone conversation, he verified the fact that Little had signed the letter and understood its purpose. He said that they reached an agreement and "completed our transaction." Little denied that he talked to Perry at that time, but testified about several phone conversations with Perry earlier on the morning of July 12, before Deaton delivered the letter. He denied that Perry accepted the terms of his letter in the phone conversation. The situation during the trial was that Perry affirmed and Little denied that Perry accepted the terms of the letter in a phone conversation which they had about noon on July 12. Each party testified about actual phone communications with the other, and neither suggested any other type of communication. In this context a separate issue about Perry's communication would have been another phase or different shade of the acceptance issue which was submitted. Rule 279, Texas Rules of Civil Procedure; Hodges on Special Issue Submission in Texas, § 54 (1959).

■ The intermediate court also sustained Little's contention that the contract between the parties required Perry to make an actual tender of the stock on January

22, 1962 and not later. As we read and understand the contract, Perry was powerless to do anything until January 22, 1962 had passed. According to the letter, Deaton had an enforceable right "to pick up this stock * * * on or before January 22, 1962." Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470 (1945). Little knew that Deaton had this right through January 22, and he knew that he had given Deaton no letter authorizing him to acquire the stock. It was not until January 23 that Perry could do anything, and on that date he wrote Little:

"In accordance with your letter of July 11, 1961, I am writing you to let you know that I am holding 5,000 of Medical Specialties Sales Corporation stock which you have agreed to purchase from me at $5 per share * * *. I am looking forward to hearing from you regarding this matter."

Little's final contention is that Perry merely demanded performance, but failed to make a formal tender to Little of the stock. Little ignored the letter of July 23 and another written three days later. In several phone conversations with Perry's attorney, Little consistently refused to perform. At no time did he insist upon an actual tender. In our opinion a formal tender of the stock was not necessary. Prest v. Cole, 183 Mass. 283, 67 N.E. 246 (1903); Williams v. Patrick, 177 Mass. 160, 58 N.E. 583 (1900); Duchemin v. Kendall, 149 Mass. 171, 21 N.E. 242, 3 L.R.A. 784 (1889); Brooks v. Scoville, 81 Utah 163, 17 P.2d 218, 221 (1932); Utah Hotel Co. v. Madsen, 43 Utah 285, 134 P. 577, 583 (1913); 17 Am.Jur.2d., Contracts, § 359, 17A. C.J.S. Contracts § 480; 12A Fletcher Cyclopedia Corporations (Perm. ed.) § 5627; accord, Benson v. Meacham, 263 S.W.2d 188 (Tex.Civ.App.1953, writ ref.); Cornelius v. Harris, 163 S.W. 346 (Tex.Civ.App.1914, writ ref.). Perry complied with the agreement to hold the stock for six months during which time it declined in value and became worthless.

Little committed himself to purchase the stock if Perry was holding it on January 22, which he was. The rule governing this case is expressed in 6 Williston on Contracts, (3rd ed.) § 833:

"It is said that the strict rules of tender are not applicable to a conditional offer to perform a concurrent condition; that what is essential is that it shall appear to the court and shall have been made clear to the other party to the contract that the exchange agreed upon would be carried out immediately if the latter would do his part. This requirement involves both ability on the part of the plaintiff to perform and an indication of that ability to the other party. The actual production of the money or other thing which the plaintiff is to give is said to be unnecessary.

"As the courts have said 'the word "tender" as used in connection with such a transaction, does not mean the same thing as when used with reference to the offer to pay money where it is absolutely due, but only a readiness and willingness to perform in case of the concurrent performance by the other party, with present ability to do so, and notice to the other party of such readiness.'"

Lyons v. Snider, 136 Minn. 252, 161 N.W. 532 (1917) presented an analogous situation. On August 1, 1912 Snider sold five hundred shares of stock at ten dollars per share and agreed to repurchase the stock for eleven dollars within sixty days after notice by Snider that he desired to sell. The purchaser later notified Snider of his desire to sell the stock and stated that he would deliver the shares upon receipt of the agreed price. There was no physical tender of the stock. The court held that a readiness to deliver the stock upon Snider's payment of the agreed price sufficed, and quoted a number of authorities including Osgood v. Skinner, 211 Ill. 229, 71 N.E. 869 (1904):

"'We are also of the opinion that the offer to perform the contract was suffi-

cient. The transfer of the stock and the payment for the same were intended to be mutual and concurrent acts, and it was not contemplated that either party should perform some act as a condition precedent to the act of the other. If a contract calls for successive acts, first by one party, and then by the other, there is no breach by one if the precedent act has not been performed by the other; but if the contract contemplates concurrent acts, it is sufficient to put one party in default that the other party is ready, willing, and offers to perform his part of the contract. A tender as applied to such a case, does not mean the same kind of offer as the tender of money in payment of a debt, where the money is offered to the creditor unconditionally and the transaction is completed and ended. It means an offer accompanied with ability to do the act required of one party provided the other will concurrently do what he is required to do.' "

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.