Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-07-00674-CV

**SUBISSI HOLDINGS, L.P.**,
Appellant

v.

**HILCORP ENERGY I, L.P.** & Hilcorp Energy Co.,
Appellees

From the 79th Judicial District Court, Brooks County, Texas
Trial Court No. 05-11-13140-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:     Alma L. López, Chief Justice

Sitting:        Alma L. López, Chief Justice
                Phylis J. Speedlin, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  June 25, 2008

AFFIRMED

SubISSI Holdings, L.P. (SubISSI) filed a breach of contract action against Hilcorp Energy

I, L.P. and Hilcorp Energy Co. (Hilcorp), alleging Hilcorp breached a joint operating agreement and

requesting specific performance.   Hilcorp counterclaimed seeking a declaratory judgment

concerning the same joint operating agreement.  All parties moved for summary judgment. The trial

court denied SubISSI's summary judgment motion but granted Hilcorp's summary judgment motion.

SubISSI appeals, and we affirm the trial court's judgment.

## BACKGROUND

SubISSI and Hilcorp were partners, and jointly operated mineral leases. Under a section of the parties' joint operating agreement entitled Area of Mutual Interest (AMI), if one of the parties acquired a mineral interest in the AMI, such offering party was required to notify the other party of the investment opportunity. The receiving party had thirty days following the delivery of such notice to exercise its participation by delivering a written notice of its election to the offering party. *If* the receiving party elected to participate, "*then* the Offering Party shall execute, acknowledge, and deliver to [the receiving party] an assignment thereof . . . , *and* [the receiving party] shall pay . . . the Offering Party" the associated purchase price. Here, Hilcorp acquired land in the AMI (the "Prize Acquisition") and was the offering party, and SubISSI was the receiving party and elected to participate.

Although the parties agree to the meaning of the foregoing section of the operating agreement, Hilcorp and SubISSI disagree over the meaning of the next paragraph of the operating agreement, entitled Election Not to Participate.

> *If* any Party fails to elect to acquire its Participation Interest in a given Offered Interest within such thirty (30) day period, or elects to acquire but fails to pay its Purchase Price on or before the thirtieth (30th) day *following* the date that the Offering Party *tenders the assignment* thereof (a "Rejecting Party"), *then* such Rejecting Party shall have no further rights with respect to such Offered Interest, and the other Parties shall have no obligations to the Rejecting Party with respect to such Offered Interest . . . .

(emphasis added).

After SubISSI elected to participate in the Prize Acquisition, Hilcorp prepared and delivered a letter to SubISSI dated December 4, 2003. Enclosed with the letter were the initial closing

settlement statement; three originals of an executable assignment, conveyance, and bill of sale between Hilcorp and SubISSI; and wire transfer instructions for SubISSI's payment. The letter instructed SubISSI to review and execute the documents, and

> upon execution of the documents please return one original Initial Closing Settlement Statement and all of the originals of the Assignment, Conveyance, and Bill of Sale to . . . Hilcorp for further execution and recordation. When available Hilcorp will return to you a fully executed original, and a copy of the recorded instrument.

SubISSI received the letter but did not return the executed documents or send payment. On January 22, 2004, the principals of SubISSI (Thomas W. Hook) and Hilcorp (Jeffery D. Hildebrand) met for lunch. Hook offered a check, dated December 26, 2003, to Hildebrand in payment of the Prize Acquisition. Hildebrand refused the check and informed Hook that SubISSI had forfeited its rights with respect to the Prize Acquisition because SubISSI had missed the January 3, 2004 deadline for payment, i.e. thirty days from the date of Hilcorp's letter.

The two issues in this case center on whether Hilcorp owed SubISSI the performance of a condition precedent and what constitutes the "tender" of assignment. The answer to these questions determines when SubISSI's payment was due in order to avoid forfeiture of its right to participate in the Prize Acquisition. SubISSI argues Hilcorp was obligated to deliver a *fully executed* assignment *before* it was obligated to pay and, because Hilcorp failed to do that, the thirty-day period in which to pay was not triggered. Hilcorp counters that its obligation to deliver an assignment of the interest and SubISSI's obligation to pay for the interest were mutual covenants, and the time table on SubISSI's payment began to run on December 4, 2003, when Hilcorp delivered

to SubISSI a letter with an enclosed but unexecuted assignment.[1]  Furthermore, because SubISSI

first tendered payment for the Prize Acquisition on January 22, 2004, after the thirty-day period

expired, Hilcorp contends SubISSI has no further rights in the Prize Acquisition.  The trial court

agreed with Hilcorp, and SubISSI appeals.

### STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment de novo.  *Valores*

*Corporativos, S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160, 162 (Tex. App.—San Antonio 1997,

---

[1] The body of the December 4, 2003 letter read:

> Pursuant to the Area of Mutual Interest provision set forth in Article XV-G on Page 14B of Operating Agreement dated January 1, 2003, executed by and between Hilcorp Energy I, L.P. ("Hilcorp") and SubISSI Holdings, L.P. ("SubISSI"), SubISSI has elected to participate for its proportionate 42.85% share of the interests acquired by Hilcorp from Prize Energy Resources, L.P.
>
> In settlement of this transaction, enclosed please find the following documents for your review and executon:
>
> •  Initial Closing Settlement Statement (with back-up detail) setting forth and detailing the sum of $438,287.00 due Hilcorp.  (two originals; please return one executed original to my attention)
> •  Assignment, Conveyance and Bill of Sale dated effective July 1, 2003, by and between Hilcorp Energy I, L.P., as Assignor and SubISSI Holdings, L.P., as Assignee.  (three originals; after execution return all three to my attention for further execution and handling.  Hilcorp will return one fully executed original to your attention)
> •  Hilcorp wire transfer instructions to remit payment of the $438,287.00 set forth on the Initial Closing Settlement Statement.
>
>     . . . .
>
> Relative to the acquisition of the DeLuna and Huerta wells [the Prize Acquistion], upon execution of the documents please return one original Initial Closing Settlement Statement and all of the originals of the Assignment, Conveyance and Bill of Sale to my attention at Hilcorp for further execution and recordation.  When available Hilcorp will return to you a fully executed original, and a copy of the recorded instrument.
>
> If you have any questions, or need any additional information, please do not hesitate to give me a call at (713) 289-2633.

writ denied). Once opposing parties file cross-motions for summary judgment, each party must prove it is entitled to judgment as a matter of law. *See Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993). When the trial court grants one motion and denies the other, we should determine all issues presented and render the judgment that the trial court should have rendered. *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). We should render judgment even though the effect is to review the trial court's denial of a summary judgment motion. *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex. 1980).

## BREACH OF CONTRACT

To succeed on a breach of contract claim, the plaintiff must prove: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *McLaughlin, Inc. v. Northstar Drilling Techs., Inc.*, 138 S.W.3d 24, 27 (Tex. App.—San Antonio 2004, no pet.). The plaintiff must plead and prove that all conditions precedent giving rise to the cause of action have been satisfied. *McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Whether a contract is ambiguous is a question of law. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). If there is no ambiguity, meaning the words of the agreement can be given only one legal interpretation, we must construe the meaning of the contract as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *see also Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). An ambiguity does not arise simply because the parties offer conflicting interpretations but exits only if the contract language can have two or more

reasonable interpretations. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). Our principal goal is "to ascertain the true intentions of the parties as expressed in the instrument" while giving meaning to all provisions of the agreement. *Coker*, 650 S.W.2d at 393.

## A.    Condition Precedent

A condition precedent is an act or event "that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). To establish whether a condition precedent exists, we must determine the intention of the parties by considering the entire contract. *Id.* Typically, words such as "if" and "provided that" indicate a condition rather than a promise; however, they are not necessary to prove a condition exists. *Schwarz-Jordan, Inc. of Houston v. Delisle Constr. Co.*, 569 S.W.2d 878, 881 (Tex. 1978). "[W]here the intent of the parties is doubtful or where a condition would impose an absured [sic] or impossible result then the agreement will be interpreted as creating a covenant rather than a condition." *Hohenberg Bros. Co.*, 537 S.W.2d at 3.

SubISSI argues that Hilcorp had an obligation to "execute, acknowledge, and deliver" the Prize Acquisition assignment *before* SubISSI was obligated to pay Hilcorp the purchase price. Thus, SubISSI's position is that Hilcorp's delivery of an executed assignment was a condition precedent to SubISSI's obligation to pay. The creation of such a condition precedent, however, would require an explicit statement of condition or would be evidenced by the intent of the parties as established by the agreement as a whole. *See Schwarz-Jordan, Inc. of Houston*, 569 S.W.2d at 881; *Hohenberg Bros. Co.*, 537 S.W.2d at 3. SubISSI confuses its obligation to pay with the required timing of its

payment. There is a condition precedent in the agreement, but it is not in the provision to which SubISSI refers. The condition precedent is found in the first provision:

> **If** . . . the [receiving party] elects to acquire its respective . . . Interest, **_then_** the Offering Party shall execute, acknowledge, and deliver to [the receiving party] an assignment thereof . . . , **_and_** [the receiving party] shall pay . . . the Offering Party . . . [the associated] Purchase Price.

The condition precedent is the election to participate by SubISSI. Hilcorp was not obligated to assign the interest nor was SubISSI obligated to pay for the assigned interest until SubISSI elected to participate. However, once SubISSI elected to participate, **both** Hilcorp and SubISSI had obligations—concurrently.[2]

Therefore, having reviewed the agreement's language, we conclude there is an explicit condition to SubISSI's obligation to pay—it is SubISSI's election to participate. There is, however, no indication in the agreement that the parties intended for SubISSI to be unobligated to pay *until* Hilcorp assigned the interest. The very language of the contract states once SubISSI elected to participate, "[Hilcorp] *shall* execute, acknowledge, and deliver to [SubISSI] an assignment thereof . . . , **and** [SubISSI] *shall* pay . . . [Hilcorp]" the associated purchase price. The agreement explicitly uses the conjunctive word "and" rather than a temporal word such as "then" or "afterward." Based on the plain language of the agreement, we conclude the parties had concurrent obligations, and

---

[2] SubISSI argues concurrent obligations are acts "to be performed at the same time" indicating simultaneous acts. In reviewing cases dealing with concurrent obligations, the acts are seldom simultaneous. In real estate transactions, for example, the purchasing party may need to obtain financing which may require title insurance which may depend upon the seller clearing title to the property in advance of the closing. Although one party might need to act before the other party may proceed with its obligation, each party is required to take the necessary actions to complete the transaction by a certain date, and no condition precedent exists. *See Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 79-81 (Tex. App.—Austin 2003, pet. denied); *cf. Petras v. Criswell*, 248 S.W.3d 471, 480 (Tex. App.—Dallas 2008, no pet.).

Hilcorp owed no precedential performance to SubISSI before its obligation to pay arose. *See Schwarz-Jordan, Inc. of Houston*, 569 S.W.2d at 881; *Hohenberg Bros. Co.*, 537 S.W.2d at 3.

**B.     Tender and Timing**

The timing of SubISSI's concurrent obligation to pay was not constrained to the thirty-day period following Hilcorp's "tender" of the Prize Acquisition assignment, but was merely limited to a period no later than the thirtieth day following the "tender." SubISSI could have paid the purchase price following its election to participate but before Hilcorp offered the assignment. The key question is whether Hilcorp's delivery of the December 4, 2003 letter and unexecuted assignment was an acceptable tender and triggered SubISSI's thirty-day limitation.

Each party asserts an alternate meaning for the words "tenders the assignment." Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the agreement shows the words are used in a technical or different sense. *Western Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (1953), *cert. denied*, 347 U.S. 928 (1954). Additionally, the parties to an agreement are presumed to intend every clause to have some effect. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 331 (Tex. 1983).

While there is no indication in the agreement that the parties intended to give the verb "tender" a technical meaning, it makes little difference in our analysis. The verb, "tender," is defined as: (1) "to proffer in satisfaction of an obligation or condition arising from a relationship between parties; and (2a) "to present for acceptance: offer freely: proffer." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2355 (3d ed. 1981). Texas's legal definition of "tender" depends on the circumstances of the agreement—whether the tender concerns a condition precedent or a

concurrent obligation.[3] *See Perry v. Little*, 419 S.W.2d 198, 200-01 (Tex. 1967). "If a contract calls for successive acts, . . . there is no breach by one if the precedent act has not been performed by the other; but if the contract contemplates concurrent acts, it is sufficient to put one party in default that the other party is ready, willing, and offers to perform his part of the contract." *Id.* at 201.

> [T]he strict rules of tender are not applicable to a conditional offer to perform a concurrent condition; . . . what is essential is that it shall appear to the court and shall have been made clear to the other party to the contract that the exchange agreed upon would be carried out immediately if the latter would do his part. This requirement involves both ability on the part of the [party] to perform and an indication of that ability to the other party. The actual production of the . . . thing which the [party] is to give is . . . unnecessary.

*Id.* at 200. The rule is different, however, when "tender" is used in reference to the offer to pay money where it is absolutely due.[4] *Id.*

Although Hilcorp and SubISSI disagree about the circumstances presented in this case, we have determined that Hilcorp and SubISSI had concurrent obligations. Applying the *Perry* tender rule to Hilcorp's concurrent obligation which involved tendering performance rather than money, we conclude Hilcorp sufficiently tendered the assignment. *See Roundville Partners, L.L.C.*, 118 S.W.3d at 79 n.7 ("The term 'tender' means to notify the other party that one intends to perform

---

[3] Black's Law Dictionary defines "tender" as a noun: (1) "[a] valid and sufficient offer of performance; specif., an unconditional offer of money or performance to satisfy a debt or obligation." It further defines "tender of performance" as: "An obligor's demonstration of readiness, willingness, and ability to perform the obligation; esp., a buyer's demonstration of readiness, willingness, and ability to pay the purchase money, or a seller's offer to deliver merchantable title." BLACK'S LAW DICTIONARY 1507-08 (8th ed. 2004). Although defined as a noun, Black's definition of tender comports with the ordinary meaning of the term.

[4] When tendering money absolutely due, the tender must be "an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less in amount than that due on a specified debt or obligation." *Baucum v. Great Am. Ins. Co. of N.Y.*, 370 S.W.2d 863, 866 (Tex. 1963). The tender must "consist[] of the actual production of the funds and offer to pay the debt involved. The tenderer must relinquish possession of it for a sufficient time and under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire its possession." *Id.*

one's side of the bargain immediately or at a specific time and place and to demand that the other

party do likewise." (citing *Perry*, 419 S.W.2d at 200-01)).

Based on the plain meaning of the agreement's language, Hilcorp proffered the assignment

of the Prize Acquisition interest in the letter dated December 4, 2003. *See Western Reserve Life Ins.*

*Co.*, 261 S.W.2d at 557. Hilcorp presented the assignment for SubISSI's acceptance as evidenced

through the letter's explanation:

> In settlement of this transaction, enclosed please find the following
> documents *for your review and execution*: . . .
>
> • *Assignment*, Conveyance and Bill of Sale dated effective July 1,
> 2003, by and between Hilcorp Energy I, L.P., as Assignor and
> SubISSI Holdings, L.P., as Assignee. (three originals; *after execution
> return all three to my attention for further execution and handling.
> Hilcorp will return one fully executed original to your attention*).

(emphasis added). Furthermore, Hilcorp indicated it would comply with its concurrent obligation

to "execute, acknowledge, and deliver to [SubISSI] an assignment thereof," not based upon

SubISSI's payment of the purchase price, but based upon SubISSI's return of the three executed

assignment originals, thereby giving meaning to the "execute, acknowledge, and deliver" provision

in the agreement. *See Ogden*, 662 S.W.2d at 331. Hilcorp's letter dated December 4, 2003 served

to "tender[] the assignment" to SubISSI, thus SubISSI had thirty days from the date of the letter to

pay the purchase price unless it had a legal excuse.

Next, we determine if SubISSI was excused from its tender of payment within the thirty day

period. A tender may be excused if tendering performance would be futile or when the other party

has repudiated the contract. *Burford v. Pounders*, 145 Tex. 460, 199 S.W.2d 141, 143-44 (1947).

When reviewing oil and gas operating agreements, the court construes options like that found in the

instant agreement as preferential rights of purchase, creating "an option for a specified period." *N. Cent. Oil Corp. v. La. Land & Exploration Co.*, 22 S.W.3d 572, 577 n.6, 579-80 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Because an option to purchase property is a unilateral benefit to the optionee, options must be exercised strictly according to the terms of the agreement. *Zeidman v. Davis*, 161 Tex. 496, 342 S.W.2d 555, 558 (1961); *Johnson v. Portwood*, 89 Tex. 235, 34 S.W. 596, 598 (1896). "Even where the agreement does not expressly state that 'time is of the essence,' time is essential" to adequately exercise an option. *Probus Props. v. Kirby*, 200 S.W.3d 258, 262 (Tex. App.—Dallas 2006, pet. denied). Here, Hilcorp had not repudiated the agreement nor had it indicated that it would not fulfill its obligations under the agreement. In fact, through its December 4, 2003 letter, Hilcorp indicated it would take further action to complete the transaction. Therefore, because it was SubISSI's option to purchase the Prize Acquisition, time was of the essence for SubISSI to pay Hilcorp the purchase price, and SubISSI was not excused from tendering payment before or during the thirty-day period.

## C.      Specific Performance

Specific performance is an equitable remedy resting with the discretion of the court. *Walzem Dev. Co. v. Gerfers*, 487 S.W.2d 219, 222 (Tex. Civ. App.—San Antonio 1972, writ ref'd n.r.e.). Unless tender of performance would be futile, it is a prerequisite to obtaining a specific performance remedy. *Roundville Partners, L.L.C.*, 118 S.W.3d at 79. Because SubISSI was not excused from tendering payment and time was of the essence, SubISSI was not entitled to a specific performance remedy because SubISSI did not tender payment within the required time frame. *Id.*

**D.      Is There an Ambiguity?**

Although the parties asserted conflicting interpretations of "tenders the assignment," the meaning of the word "tender" is unambiguous regardless of whether we apply the ordinary or legal definition.   SubISSI contends Hilcorp was required to execute, acknowledge, and deliver the assignment to trigger the thirty day period.   "Tender" is not the same as "deliver" especially when used in the context of property conveyances.   When conveying property, delivery means: (1) the grantor's relinquishment of control over the [assignment] to the grantee or a third party; (2) with contemporaneous intent that the [assignment] is to take effect as a conveyance.   *Ragland v. Kelner*, 148 Tex. 132, 221 S.W.2d 357, 359 (1949).   "The instrument must not only be placed within the control of the grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance."   *Steffian v. Milmo Nat'l Bank*, 69 Tex. 513, 6 S.W. 823, 824 (1888).   In Texas, the instrument being delivered must be signed and acknowledged.   *Hubbard v. Cox*, 76 Tex. 239, 13 S.W. 170, 170 (1890).   Delivery also requires that the grantee accept the assignment.   *See Puckett v. Hoover*, 146 Tex. 1, 202 S.W.2d 209, 211 (1947).   The execution, acknowledgment, and delivery of the assignment would have resulted in the conveyance of the Prize Acquisition interest.   *See Hubbard*, 13 S.W. at 170.   If the parties had intended Hilcorp to *convey the interest* to SubISSI in order to trigger the thirty days for SubISSI to pay, they could have easily used the word "deliver" or the words "execute, acknowledge, and deliver" instead of "tender."   In fact, the parties did use the term "deliver" in describing their concurrent obligations but chose the term "tender" in discussing the action by Hilcorp that would trigger the thirty day payment period.   Because we are bound to ascertain the true intentions of the parties as provided by the contract while giving meaning to all provisions of the contract, we cannot say there is any ambiguity in the agreement which only

required Hilcorp to tender the assignment in order to trigger SubISSI's thirty day payment period. *See Coker*, 650 S.W.2d at 393.

## CONCLUSION

For the foregoing reasons, we conclude the trial court properly granted Hilcorp's motion for summary judgment and properly denied SubISSI's motion for summary judgment.

Alma L. López, Chief Justice