**Affirmed and Opinion Filed April 3, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00181-CV**

**TESSMER LAW FIRM, P.L.L.C., ROSALINDA GOMEZ,**
**AND JOSE GUADALUPE GUEL, Appellants**
**V.**
**JOHNNY CARRILLO, SUZETTE CARRILLO**
**AND ISAIAH J. CARRILLO, Appellees**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-03144-2021**

## MEMORANDUM OPINION

Before Justices Garcia, Breedlove, and Kennedy
Opinion by Justice Breedlove

In this suit to enforce a settlement agreement, the trial court rendered summary judgment for plaintiffs/appellees Johnny Carrillo, Suzette Carrillo, and Isaiah J. Carrillo. Appellants Rosalinda Villagomez, Jose Guadalupe Guel, and Tessmer Law Firm, P.L.L.C. appeal, contending summary judgment was improper because the Carrillos did not satisfy their burden to establish conclusively that an enforceable settlement agreement was created, or in the alternative, that there were genuine issues of material fact precluding summary judgment. Concluding that the Carrillos

established their right to judgment as a matter of law, we affirm the trial court's judgment.

## BACKGROUND

The settlement agreement at issue arose from the death of Geanesse Guel in a two-vehicle automobile accident in October 2020. Geanesse was a passenger in a car driven by appellee Isaiah Carrillo. Another driver collided with Isaiah's car and then fled the scene on foot. Isaiah was severely injured and Geanesse died at the scene.

Appellants Rosalinda Villagomez[1] and Jose Guadalupe Guel are Geanesse's parents. Appellant Tessmer Law Firm, P.L.L.C. (TLF) represents Villagomez and Guel.

Isaiah is the son of appellees Johnny Carrillo and Suzette Carrillo. The Carrillos were insureds under an automobile liability policy issued by Home State County Mutual Insurance Company. Villagomez made a claim with Home State for Geanesse's death. Adjuster Lola Shoemake was assigned to handle the claim.

On or about November 11, 2020, Shoemake received a letter from Katherine Cabello-Flores, an attorney at TLF. Cabello-Flores wrote that "[t]his office represents Rosalinda Villagomez, in relation to the loss of life of her daughter" in the October 2020 accident.

---

[1] Rosalinda's surname appears as both "Gomez" and "Villagomez" in the record and the briefs. We will use "Villagomez," the spelling used most often in her brief.

–2–

On March 26, 2021, Shoemake and Cabello-Flores had a telephone conversation. Shoemake later testified in her affidavit that "[i]n that conversation, Cabello-Flores stated Villagomez desired to settle the claims arising from Guel's death, that she had obtained the father's permission to handle the settlement on his behalf, that [TLF] would work with the parents to divide the settlement funds, and that Cabello-Flores would have both parents sign a full and final release for the benefit of the Carrillos."

A few days later, Elaine Simons, a TLF paralegal, emailed Shoemake. The email provided information related to Shoemake's conversation with Cabello-Flores. Simons attached a signed release and affidavit of heirship from Guel. Simons explained that no autopsy report was available due to the pending criminal case and there were no medical bills or liens because Geanesse died at the scene.

On March 31, 2021, Cabello-Flores again wrote to Shoemake, reiterating that "this office represents Rosalinda Villagomez in connection with the wrongful death of her daughter" in the October 2020 motor vehicle accident, and stating:

> We have reviewed all the information presently available in order to evaluate this case for settlement purposes and based upon the review of the liability and damage aspects of this case, we are authorized to offer to settle this matter, at this time, for the total amount of **$100,000.00.**
>
> We hereby make demand upon you for tender of **$100,000.00** before the expiration of **thirty (30) days** from your receipt of this demand. In exchange, we propose to fully release your insured for all claims and liens. This demand is extremely reasonable and just. In the event this demand is not met by the expiration date, this offer of settlement is automatically revoked and we will proceed to litigation.

–3–

On April 13, 2021, Simons emailed Shoemake requesting "an update on the attached demand that was sent on March 31, 2021." Shoemake later testified that on April 16, 2021, she spoke with Simons "and advised her that Home State accepted the demand on behalf of the Carrillos." She "further stated that signed releases would be needed" from both Villagomez and Guel. She and Simons "agreed that one release could be used, as opposed to two separate releases." Shoemake followed up by email on the same day:

> Elaine,
> Our email serves to confirm our acceptance of the settlement demand of $100,000 made on behalf of decedent Geanesse Guel. We will forward our formal acceptance letter along with our release for signature. In the meantime, if you have any questions, please let me know.
> Sincerely,
> Lola

Shoemake testified that "[a]t that time, Home State was ready and willing to pay $100,000 to settle the claims arising from Geanesse's death and had the ability to make the payment in exchange for the executed releases." She continued, "Home State accepted the settlement demand specifically because it provided for the release of the insureds, which would relieve them of the expenses, costs, uncertainties, distractions, and potential liabilities of litigation."

On April 23, 2021, however, Cabello-Flores wrote Shoemake:

> On March 31, 2021, our office sent demand for tender of **$100,000.00** for settlement of the above-referenced matter. Unfortunately, it has come to our attention that we have not received requested information from your office necessary to evaluate this case for settlement purposes.

Therefore, please be advised that we hereby rescind the previous demand for tender of **$100,000.00.**

We respectfully request that your office provide your insured's policy documents and declarations page so that we may properly evaluate this matter. Upon receipt and review, we will submit a second demand to your office.

Cabello-Flores again wrote Shoemake on May 18, 2021, stating that "we are authorized to offer to settle this matter, at this time, for the total amount of policy limits." Cabello-Flores demanded tender of the policy limits within thirty days, proposing to "fully release your insured for all claims and liens" in exchange.

Shoemake responded by letter dated May 31, 2021, discussing the parties' previous communications and concluding,

Therefore, with this letter, we reaffirm our acceptance of your settlement demand for $100,000 which was represented to us by you as having been made: (1) in good faith; (2) on behalf of Ms. Rosalinda Villagomez and Jose Guadalupe Guel; (3) for resolving any and all claims and liens against our insured, which include Johnny Carrillo, Suzette Carrillo and Isaiah Carrillo; and (4) resolves any and all claims related to the auto accident on or about October 23, 2020, that resulted in the death of Geanesse Guel.

Please provide your payment instructions for concluding our agreed acceptance of your settlement demand.

The record does not include a response by Cabello-Flores or TLF.

The Carrillos filed this lawsuit on June 14, 2021, seeking a declaratory judgment that "there is a valid settlement and release agreement" between the parties releasing the Carrillos "from all legal liability" to Villagomez and Guel arising from the collision; that "Home State is willing, ready, and able to effectuate the agreement

once drafting instructions are received," and that TLF, Villagomez, and Guel "are in breach of the settlement and release agreement by failing to provide drafting instructions to complete the settlement and by preparing to file suit on claims that they have already agreed to release."

Villagomez, however, represented by TLF, filed suit against Isaiah and Johnny Carrillo in Bexar County on July 20, 2021, seeking damages for Geanesse's wrongful death. The record also reflects that Cabello-Flores sent a letter to Shoemake on August 17, 2021, demanding a tender of the policy limits in accordance with *G. A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

Meanwhile, in this lawsuit, the Carrillos moved for summary judgment "to enforce the settlement agreement negotiated by their insurance carrier with Defendants," supported by Shoemake's affidavit and exhibits. Appellants responded, relying on an affidavit by Cabello-Flores and additional exhibits. Cabello-Flores testified:

- Home State "ignored" TLF's request for a copy of the policy's declarations page;

- Her March 31, 2021 settlement demand "was sent in error" and "was not approved or authorized by the Defendants" or by Heather Clement Tessmer, the "lead attorney in charge for clients" at TLF;

- She was unaware that the settlement demand "was not in accordance with" the policy limits because Home State never sent the declarations page;

- Home State did not tender $100,000 within 30 days; "[t]herefore, the acceptance was never performed";

–6–

- On April 23, 2021, "our office realized that the correspondence was not authorized by the Defendants or [Heather Clement Tessmer], and that Shoemake did not disclose essential information, including the insurance declarations pages, to our office";

- "On or about" April 23, 2021, she had a phone conversation with Shoemake where Shoemake "orally disclosed" that the policy limit was $250,000;

- On April 23, 2021, she sent a revocation letter of the previous demand;

- On May 18, 2021, she sent another letter to Shoemake demanding payment of the full policy limits;

- On June 1, 2021, Shoemake replied, "seeking to enforce the initial demand of $100,000";

- On August 17, 2021, TLF sent a *Stowers* demand for payment of the full policy limits; and

- No one at TLF saw the policy's declarations page until it was attached to the Carrillos' motion for summary judgment in this lawsuit. They discovered that the policy limits were $500,000, not $250,000 "as indicated by Shoemake."

The Carrillos filed a reply to the summary judgment response, and objected to Cabello-Flores's affidavit on the ground that her testimony "violates the lawyer-witness rule."

The trial court signed an order sustaining the Carrillos' objections and granting their motion for summary judgment. The court ruled that the Carrillos were entitled to a declaratory judgment that Cabello-Flores's March 31, 2021 demand letter and Shoemake's April 16, 2021 email "constitute a valid and enforceable settlement agreement between Home State County Mutual Insurance Company and Defendants Tessmer Law Firm, PLLC, Rosalinda Villagomez, and Jose Guadalupe

–7–

Guel." The court also ruled, among other matters, that the Carrillos were entitled to specific performance of the settlement agreement, and that its order "disposes of all claims and is a final, appealable judgment." This appeal followed.

## ISSUE AND STANDARDS OF REVIEW

In a single issue, appellants contend "[t]he trial court's summary judgment should be reversed because Appellees did not satisfy their burden of conclusively establishing that an enforceable settlement agreement was created and, alternatively, Appellants' evidence established fact issues for the jury's resolution."

We review a grant of summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019).

We review a trial court's decision to admit or exclude summary judgment evidence for an abuse of discretion. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). Even if a trial court abuses its discretion, we will only reverse if the error probably caused the rendition of an improper judgment. TEX. R. APP. P.

44.1(a)(1); *see Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (appellate court must uphold trial court's evidentiary ruling if there is any legitimate basis for the ruling, and will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment).

### DISCUSSION

Appellants contend the Carrillos failed to meet their burden to establish that an enforceable settlement agreement existed. They contend (1) there was no "tender" of the $100,000 settlement amount by the required date, and accordingly, no acceptance of the offer, (2) the demand was limited to Villagomez's claims against Johnny Carrillo, and Home State made a counteroffer, not an acceptance, by adding parties to the demand, and (3) "the Carrillos presented no evidence proving that the Tessmer Law Firm had authority to enter into the purported settlement agreement." They also argue that the trial court's evidentiary rulings were erroneous.

### 1. Tender of payment

Appellants argue that Home State did not "tender" payment in strict compliance with the terms of the demand. They contend that because Cabello-Flores demanded "tender of $100,000," "actual production of the funds" was required, and Shoemake's email response accepting the offer was insufficient. Appellants rely on *Baucum v. Great Am. Ins. Co. of New York*, 370 S.W.2d 863, 866 (Tex. 1963), and *Givens v. Midland Mtge. Co.*, 393 S.W.3d 876, 882–83 (Tex. App.—Dallas 2012,

–9–

no pet.),[2] in support of their argument. In both of these cases, the courts held that "a valid and legal tender of money requires actual production of the funds" and offer to pay the debt involved. *Baucum*, 370 S.W.2d at 866; *Givens*, 393 S.W.3d at 882–83.

The Carrillos respond that *Baucum* and *Givens* involved fulfillment of obligations that were "absolutely due," rather than a mutual exchange of promises. They argue that under the circumstances in this case, "tender" "only required Home State to give notice to the Appellants that it was ready and willing to perform and had the present ability to do so," citing *Perry v. Little*, 419 S.W.2d 198, 200 (Tex. 1967).

In *Perry*, Little promised Perry he would purchase certain stocks if Perry first purchased the stocks from a third party and held them until a certain date. *Id.* at 199. Perry did so and contacted Little when the date for holding the stocks passed. *Id.* Little, however, refused to purchase the stock. *Id.* at 200. In Perry's subsequent suit for breach of contract, the supreme court concluded that Perry had "tendered" the stock, defining "tender" as "a readiness and willingness to perform in case of the

---

[2] Appellants also rely on *Eid v. Pond*, No. 01-18-00553-CV, 2019 WL 1941348, at *3 (Tex. App.—Houston [1st Dist.] May 2, 2019) (mem. op.), *judgment vacated after settlement* (Nov. 22, 2019). In *Eid*, the court held that an insurer's letter making a separate counteroffer "and not unconditionally accepting the terms of the demand letter" was not a "tender" of an insurance policy's limits. *See id.* The court stated that "[p]ayment is a material term of a settlement agreement, and acceptance must be in strict compliance with the terms of the original offer." *Id.* Here, however, Shoemake's email "confirm[ing] our acceptance of the settlement demand of $100,000 made on behalf of decedent Geanesse Guel" was not a "separate counteroffer." *Cf. id.* (insurance company's letter required signature of additional party and failed to state the policy limits as the demand required). Accordingly, we conclude *Eid* does not provide guidance here.

–10–

concurrent performance by the other party, with present ability to do so, and notice to the other party of such readiness." *Id.* The court explained,

> It is said that the strict rules of tender are not applicable to a conditional offer to perform a concurrent condition; that what is essential is that it shall appear to the court and shall have been made clear to the other party to the contract that the exchange agreed upon would be carried out immediately if the latter would do his part. This requirement involves both ability on the part of the plaintiff to perform and an indication of that ability to the other party. The actual production of the money or other thing which the plaintiff is to give is said to be unnecessary.
>
> As the courts have said[,] the word 'tender' as used in connection with such a transaction, does not mean the same thing as when used with reference to the offer to pay money where it is absolutely due, but only a readiness and willingness to perform in case of the concurrent performance by the other party, with present ability to do so, and notice to the other party of such readiness.

*Id.* (internal quotations omitted).

Citing *Perry* and distinguishing *Baucum*,[3] we have explained that "[s]trict rules of tender are not applicable to a conditional offer to perform a concurrent condition." *Bavarian Pastry Shop, Inc. v. Bavarian Bakeries, Inc.*, No. 05-94-01002-CV, 1995 WL 702571, at *2 (Tex. App.—Dallas Nov. 22, 1995,

---

[3] *Givens*, the other case cited by appellants for the proposition that "tender" requires actual production of the funds, follows *Baucum*. *See Givens*, 393 S.W.3d at 882–83. In that case, Givens argued he had been denied the opportunity to reinstate his mortgage loan after default. *Id.* The deed of trust provided that to reinstate the underlying promissory note, the borrower was required to "tender in a lump sum all amounts required to bring Borrower's amount current." *Id.* at 882–83. There was undisputed summary judgment evidence that the lender sent Givens a reinstatement quote "setting out the necessary funds to be paid in order to reinstate the note," and that Givens had not paid the amount indicated. *Id.* at 878, 883. As in *Baucum*, and unlike *Perry* or this case, the money in question was "absolutely due." *See Perry*, 419 S.W.2d at 200.

–11–

no writ) (not designated for publication) ("the rule of tender found in *Baucum* is inapplicable" to a conditional offer to perform a concurrent condition). In that case, the parties agreed to the sale of a bakery by signing an asset purchase agreement and a consulting agreement. *Id.* at *1. The sellers "began to have second thoughts" and attempted to modify the agreements. *Id.* The parties did not reach agreement on any modifications, and the buyers attempted to proceed with the closing by giving their attorney a cashier's check. *Id.* at *2. The buyers' attorney sent a copy of the check to the seller's attorney and stated that the buyers "were ready to perform." *Id.* The sellers did not close, the buyers sued, and a jury made findings in the buyers' favor. *Id.*

On appeal, the sellers argued that because the buyers never presented the cashier's check to them, there was no "tender" of performance under the contract. *Id.* We rejected this argument, explaining, that "[w]hen a party sues for breach of a contract requiring mutual performance obligations, he need not tender performance of the contract." *Id.* "What is required is: (1) readiness and willingness to perform in case of the concurrent performance by the other party; (2) a present willingness to do so; and (3) notice to the other party of such readiness." *Id.* (citing *Perry*, 419 S.W.2d at 200). "The actual delivery of the money is unnecessary." *Id.* (citing *Perry*, 419 S.W.2d at 200). We distinguished *Baucum*, explaining that the purchase agreement at issue "was a conditional offer to perform a concurrent condition," specifically, "[i]n return for $100,000 the [plaintiffs] would receive the bakery and

all of its assets." *Id.* We concluded that "the rule of tender found in *Baucum* is inapplicable." *Id.*; *see also Luccia v. Ross*, 274 S.W.3d 140, 149–50 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("The term 'tender' means to notify the other party that one intends to perform one's side of the bargain immediately or at a specific time and place and to demand that the other party do likewise." [citing *Perry* and *Bavarian Pastry Shop*]).

As in *Bavarian Pastry Shop*, we conclude that "the rule of tender found in *Baucum* is inapplicable" because Shoemake's email "demonstrated [Home State's] ability and willingness to make a tender" of the amount demanded in Cabello-Flores's letter. *See Bavarian Pastry Shop*, 1995 WL 702571, at *3. We overrule this portion of appellants' issue.

### 2. Acceptance of offer

Appellants contend that the Carrillos "did not accept the settlement demand per its required terms of acceptance." They argue that at most, Shoemake made a counteroffer to settle Villagomez's claims against Johnny Carrillo (father of Isaiah, the driver of the car), and the settlement did not include Geanesse's survival claims or Guel's wrongful death claims.

The Carrillos first respond that appellants have waived these complaints by failing to raise them until their motion for new trial. Appellants correctly argue that they bore no burden in opposing the Carrillos' summary judgment motion; the Carrillos were required to prove their right to judgment as a matter of law regardless

of any response appellants made, or did not make. *See, e.g., M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). Accordingly, appellants may argue on appeal that the Carrillos' summary judgment proof was insufficient as a matter of law. *See id.* But "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex. R. Civ. P. 166a(c). An issue not raised in a summary judgment response remains waived on appeal even if the non-movant subsequently raised it in a motion for new trial. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 467 (Tex. 1998).

Here, appellants argued in their motion for new trial that the settlement offer and acceptance did not include Guel, Suzette Carrillo, or Isaiah Carrillo. These arguments were not made in their summary judgment response; in fact, appellants argued there that they "made a unilateral offer to Is[a]iah J. Carrillo, Plaintiff, to settle the case." In their summary judgment response, appellants argued that (1) Home State did not tender the funds, (2) "Cabello-Flores' offer" was made without authorization from Heather Clement Tessmer, (3) there was no breach because the offer was revoked by Cabello-Flores's April 23, 2021 letter, (4) the Carrillos were not entitled to specific performance because there was no tender, and (5) the Carrillos were not entitled to declaratory relief because "a genuine issue of material fact exists regarding whether a valid and enforceable contract was formed."

–14–

Shoemake's affidavit testimony and exhibits, detailed above, support the trial court's declaratory judgment that (1) Cabello-Flores's March 31, 2021 demand letter and Shoemake's April 16, 2021 email "constitute a valid and enforceable settlement agreement between Home State County Mutual Insurance Company and Defendants Tessmer Law Firm, PLLC, Rosalinda Villagomez, and Jose Guadalupe Guel"; (2) the settlement agreement was for the benefit of third-party beneficiaries Plaintiffs Johnny Carrillo, Suzette Carrillo, and Isaiah Carrillo; and (3) "the terms of the settlement agreement were to release Plaintiffs Johnny Carrillo, Suzette Carrillo, and Isaiah Carrillo for all liability for the death of Geanesse Guel in exchange for the consideration of one lump sum of $100,000.00 tendered to Defendants Tessmer Law Firm, PLLC, Rosalinda Villagomez, and Jose Guadalupe Guel." We overrule this portion of appellants' issue.

### 3. Authority to settle

Appellants further contend that summary judgment was not proper because the Carrillos "presented no evidence proving that the Tessmer law firm had authority to enter into the purported settlement agreement." We disagree. Exhibit A-4 to Shoemake's affidavit in support of the Carrillos' motion for summary judgment is a letter dated November 11, 2020, on "Tessmer Law Firm" letterhead and signed by Cabello-Flores, "Associate Attorney," stating that "[t]his office represents Rosalinda Villagomez, in relation to the loss of life of her daughter, Geanesse Kassandra Guel," in the October 24, 2020 accident. Similarly, the March 31, 2021 settlement demand

–15–

was on "Tessmer Law Firm" letterhead, signed by Cabello-Flores, stating, "we are authorized to offer to settle this matter, at this time," and promising that "we propose to fully release your insured for all claims and liens" in exchange for "tender of $100,000."

A rebuttable presumption exists that an attorney retained for litigation possesses the authority to enter into a settlement agreement on behalf of a client. *See, e.g., Strad Energy Servs. USA, Ltd. v. Bernal*, No. 04-16-00116-CV, 2016 WL 6242839, at *3 (Tex. App.—San Antonio Oct. 26, 2016, pet. denied) (mem. op.) (collecting cases). "The presumption may be rebutted by evidence that the client did not authorize the attorney to enter into the settlement." *Id.* In summary judgment proceedings, however, "a summary judgment movant may not use a presumption to shift to the non-movant the burden of raising a fact issue of rebuttal." *Chavez v. Kansas City So. Ry. Co.*, 520 S.W.3d 898, 900 (Tex. 2017). Here, the Carrillos were "required to establish affirmatively that there was no genuine issue of material fact that [the Tessmer Law Firm] was authorized" to release appellants' claims in exchange for the sum demanded; "that is, that [appellants] could not produce evidence to rebut a presumption of authority." *See id.*

The Carrillos offered evidence of the Tessmer Law Firm's own correspondence showing (1) the Tessmer Law Firm's November 11, 2020 letter to Shoemake announcing its representation of Villagomez and rescinding any "previously executed release forms"; (2) the Tessmer Law Firm's March 31, 2021

–16–

letter stating it represented Villagomez and was "authorized to offer to settle this matter" for $100,000 in exchange for a full release; and (3) the Tessmer Law Firm's April 23, 2021 letter stating that "we hereby rescind the previous demand for tender of $100,000," because "we have not received requested information from your office necessary to evaluate this case for settlement purposes" signed by Cabello-Flores. Each of these letters shows the Tessmer Law Firm's authority to act on Villagomez's behalf.

In response, Cabello-Flores testified by affidavit that "On April 23, 2021, our office realized that the [March 31, 2021] correspondence was not authorized by the Defendants" or by Heather Clement Tessmer, "the lead attorney in charge for clients at the firm." Cabello-Flores did not testify to any specific facts providing the basis for these statements. No other witness provided an affidavit on appellants' behalf. The trial court sustained the Carrillos' objections to this affidavit, but even assuming its admissibility,[4] Cabello-Flores's conclusory statements do not support appellants' contention that the Tessmer Law Firm lacked authority to enter into a settlement on appellants' behalf. *See Chavez*, 520 S.W.3d at 900. "Affidavits containing conclusory statements that fail to provide the underlying facts supporting those conclusions are not proper summary judgment evidence." *Simons v. Med.*

---

[4] Accordingly, we need not address appellants' additional complaint that the trial court erred by sustaining the Carrillos' objections to Cabello-Flores's affidavit. We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1); *Starwood Mgmt., LLC*, 530 S.W.3d at 678; *Owens-Corning Fiberglas Corp.*, 972 S.W.2d at 43.

*Hyperbarics, Inc.*, No. 05-23-00053-CV, 2024 WL 1130833, at \*4 (Tex. App.—

Dallas Mar. 15, 2024, no pet. h.) (mem. op.).

We conclude the Carrillos met their summary judgment burden "to establish

affirmatively that there was no genuine issue of material fact that [the Tessmer Law

Firm] was authorized" to enter into a settlement on appellants' behalf. *See Chavez*,

520 S.W.3d at 900. We overrule this portion of appellants' issue.

### CONCLUSION

The trial court's judgment is affirmed.

230181f.p05

/Maricela Breedlove/
_____
MARICELA BREEDLOVE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TESSMER LAW FIRM, P.L.L.C.,
ROSALINDA GOMEZ AND JOSE
GUADALUPE GUEL, Appellants

No. 05-23-00181-CV        V.

JOHNNY CARRILLO, SUZETTE
CARRILLO AND ISAIAH J.
CARRILLO, Appellees

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-03144-
2021.
Opinion delivered by Justice
Breedlove. Justices Garcia and
Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Johnny Carrillo, Suzette Carrillo and Isaiah J. Carrillo recover their costs of this appeal from appellants Tessmer Law Firm, P.L.L.C.: Rosalinda Gomez and Jose Guadalupe Guel.

Judgment entered this 3rd day of April, 2024.